Jasper TOOMBS, Administrator of the Estate of Jasper Strader Toombs, Deceased, Appellant,

v.

Oliver S. WILLIAMS, Appellee.

Court of Appeals of Kentucky.

Jan. 31, 1969.

As Modified on Denial of Rehearing
May 9, 1969.

James F. Clay, Sr., Clay & Clay, Danville, for appellant.

W. A. Wickliffe, Harrodsburg, James G. Sheehan, Jr., Danville, for appellee.

WALLIS DOWNING, Special Commissioner.

Jasper S. Toombs, at the age of twelve, while riding a bicycle, collided with a one-ton pickup truck owned and driven by Oliver S. Williams, age sixty-four. The accident was fatal. It occurred on Highway 34, July 14, 1966, about 2 p. m., at the driveway entrance of the Danville Country Club. There was no other traffic on the highway. The highway is thirty-six feet wide and divided into three traffic lanes. Each lane is twelve feet wide and marked so that there are two lanes for traffic proceeding west toward Danville and one lane for traffic going east out of town.

The driver, Oliver S. Williams, an employee, George Miller, and Mr. Williams' son, George, occupied the truck and are the eyewitnesses who testified and told what they had seen of the accident. There were no bystander witnesses.

Other witnesses testified as to physical facts. Their evidence included the marks of injury to the deceased, damage to the truck's windshield, location of the deceased's body on the highway, locations of the bicycle and the truck after the accident, and tire marks on the highway. There was testimony by the deceased's mother, Mrs. Lois Toombs, concerning oral statements made by the appellee, Oliver S. Williams, upon her arrival at the scene of the accident and shortly after the accident. Mrs. Toombs also testified about their permission for their son to ride a bicycle on the highway and their knowledge of traffic conditions on the highway.

There was testimony by the deceased's father, Jasper Toombs, relating to conversations at the hospital overheard between Mr. Williams and his son regarding an arm signal by the deceased at the time of the accident. Mr. Toombs also testified their son was intelligent and had finished the sixth grade at school; that he weighed 128 pounds and was about 5 feet 5 inches in height; that he was athletic and was dressed for swimming, wearing bathing trunks and a terry cloth jacket; and that he had ridden a bicycle since he was about three years of age and had taken bicycle safety lessons.

The testimony of the occupants of the truck was that prior to the accident the bicycle was on its extreme right side of the highway, the outside lane for westbound traffic, and that the truck was driven in the center lane, or inside lane, for westbound traffic. After the accident, the truck was brought to a stop partly in the eastbound lane across the yellow line and partly in the inside westbound lane, forty feet from the body of the deceased. The body of deceased was in the outside westbound lane near the dividing line between the two westbound lanes. There were about one hundred feet of very faint tire or skid marks crossing the yellow line and looping out into the eastbound lane and coming back to the yellow line making an arc. The truck was equipped with a wrap-around windshield that extended almost to the door. It was crushed half way

up on its right-hand side. The handlebars of the bicycle were twisted out of line and there was a dent on the inside rim of the front wheel. The only marks on the deceased's body were behind his left ear and on his left temple.

The appellee testified that he saw the deceased boy for a distance of a quarter of a mile or better before the accident occurred; that he was driving forty to forty-five miles per hour; that appellee at first was driving in the same lane in which the boy was riding and changed his lane to the inside lane in order to pass; that no turning signal was given by the boy and he denied making any statement that the deceased had given a signal; that he did not blow his horn nor slacken his speed. He further testified that the deceased was pedaling as an ordinary boy would and that he first realized that the collision occurred when he heard the impact. The driver last saw the deceased when the truck was about twenty feet from him.

The testimony of George Williams, the son, is of no help in the determination of the issues.

George Miller, the passenger, testified that the deceased was riding normally and then turned in toward the truck. He also testified that just a second before the impact he yelled: "Watch the boy, watch the kid."

The case was submitted to the jury on the duties of the appellee to operate the truck in a careful and prudent manner having regard for traffic, to keep a lookout ahead for vehicles and traffic upon the highway such as to constitute an immediate hazard, to sound his horn before undertaking to pass another vehicle, if necessary to give warning of the approach of his vehicle to the operator of any other vehicle which might be affected by the approach of the truck, and to exercise ordinary care to avoid injury; and if the defendant failed in one or more of these duties and caused the death of Jackie Toombs, the law is for plaintiff. A second instruction was the duty of Jackie Toombs to exercise ordinary care usually exercised by ordinarily careful, prudent persons of that age, intelligence and experience under similar circumstances; and his duty to look before changing the course of his vehicle, to be aware of other vehicles and not to change his course until it could be done safely, and to signal his intention to change his course for one hundred feet.

The trial resulted in a verdict of $32,500 for the appellant. The appellee filed a motion for a judgment notwithstanding the verdict, and in the alternative a motion and grounds for a new trial pursuant to CR 50.03. The trial court sustained appellee's motion for a judgment notwithstanding the verdict and overruled the appellee's motion, made in the alternative, for a new trial, and ordered that the verdict of the jury and the judgment entered thereon be set aside. The court also sustained the motion of the appellee for a directed verdict on his behalf. The motion had been overruled when made at the close of the appellant's evidence and when it had again been made at the close of all of the evidence.

A twelve-year-old child, riding a bicycle alone on a public highway, is not required by law to use the degree of care that ordinary prudent licensed truck drivers are required to exercise to avoid accidents. It would have been the duty of appellant to use care that boys of his age, intelligence and experience usually exercise to give way to the right in favor of the overtaking truck upon audible signal being given by the truck driver. It was the duty of the truck driver, about to pass the boy on the bicycle, and the duty of the boy on the bicycle, about to be passed, to render such assistance to the other as the circumstances reasonably demanded in order to obtain clearance and avoid accidents. KRS 189.350. The jury reasonably could have found that ordinary care required that

the boy be given a clearance warning. The proximate cause of this accident is a jury question, and it is for it to decide.

To hold that the defendant is entitled to judgment as a matter of law would require that the version of the accident given by the eyewitnesses be accepted as true. It must be borne in mind, however, that one of these witnesses was the defendant himself and the other was his employee. Both may be interested witnesses. The jury was not required to accept their testimony at face value. The known physical circumstances of the case—that the bicycle and the truck were proceeding in the same direction and that the truck overtook the bicycle and collided with it—together with the further fact that the driver of the truck did not sound his horn, were enough to take the case to the jury. Whether and to what extent the exculpatory testimony given in behalf of the defendant was true was for the jury to decide.

We do not conclude as a matter of law that this collision was caused by the negligence of the appellant, nor that the driver of the truck was exercising the care usually exercised by prudent men. This death case must be tested and considered in terms of likelihood and reasonable probabilities. Permissible inferences preclude a directed verdict. Collett v. Taylor, Ky., 383 S.W.2d 692.

Lareau v. Trader, Ky., 403 S.W.2d 265, is a similar case and holds this type of case to be a jury issue. A distinction between the two cases is that there were no lines marking lanes in the Lareau case. A motorist, passing a boy balanced on a bicycle where there are lanes and his safety is involved, must exercise care commensurate with the danger.

It is the opinion of the court that it was error to set aside the verdict and judgment and award a judgment to the appellee. A reinstated judgment bears interest from its original date. Elpers v. Johnson, Ky., 386 S.W.2d 267.

In conformity with this opinion the court is directed to reinstate the verdict of the jury and the judgment entered thereon.

EDWARD P. HILL, MILLIKEN, PALMORE and STEINFELD, JJ., concur.